**SO ORDERED.**

**SIGNED this 14th day of April, 2021.**



Dale L. Somers
United States Chief Bankruptcy Judge

___

Designated for online use but not print publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

**In re:**

**Mark Alan Kreutzer, Jr. and
Amy Jean Kreutzer,**

        **Debtors**

Case no. 17-20987
Chapter 7

**Memorandum Opinion and Order
Holding that Statute of Limitations Bars the Claim of USDA**

Debtors Mark Alan Kreutzer and Amy Jean Kreutzer object to the proof of claim filed by the United States of America, Department of Agriculture,[1] Rural Housing Service ("USDA") on the basis that as of the petition date, May 26, 2017, the claim was barred by the six year statute of limitations, since no payments had been made since 2010 and the note was accelerated in April

---

[1] Doc. 43. Debtors appear by Christopher R. Coons.

2011. The USDA responds that although the initial limitations period had expired, the limitations period was reinstated by partial payment, when in August 2013, with its consent, there was a short sale of the real property securing the obligation.[2] The facts are stipulated[3] and the issue fully briefed.[4] The Court holds that the statute of limitations was not reinstated by the short sale and therefore the USDA's claim was time barred as of the petition date. As a result, the Court sustains the objection to the proof of claim.

## I. Stipulated Facts

The following facts are stipulated to by the parties:[5]

1. On June 4, 2007, Debtor Mark Kreutzer (Debtor)[6] entered into a home loan agreement with the USDA[7] with a mortgage against the property at 1239 Locust Street, Eudora, KS 66025.

---

[2] The USDA appears by Steven R. McAllister, United States Attorney, and Christopher Allman, Assistant United States Attorney.

[3] Doc. 30.

[4] Docs. 43, 47, 49, 60, & 61.

[5] *See* Doc. 56.

[6] The note was signed by only Mark Kreutzer. The USDA's arguments regarding the statute of limitations focus on the conduct of Mark Kreutzer. Although the mortgage was signed by both Debtors, because the sale contract was signed only by Debtor Mark Kreutzer, the Court concludes that he was the sole owner of the property.

[7] The copy of the note attached to the USDA's proof of claim is for $112,500.00, with interest at 5.75 per cent.

2. There was a default before the note was accelerated.

3. On April 20, 2011 the note was accelerated by the USDA.

4. On May 30, 2013, Debtor Mark Kreutzer and a buyer entered a real estate contract containing a short sale[8] disclosure and short sale addendum.

5. Debtor Mark Kreutzer submitted the real estate contract to USDA for its approval.

6. On June 20, 2013, the USDA authorized the short sale of the home at 1239 Locust Street, Eudora, KS 66025.

7. This approval came after the USDA had already rejected at least one real estate contract proposing a short sale in the amount of $33,000 on April 30, 2013.

8. On August 30, 2013, Debtor Mark Kreutzer and the buyer closed upon the real estate contract. Debtors both signed the HUD-1 statement.

9. The HUD-1 Settlement Statement provided that the Closing Agent was Capital Title Insurance Company, L.C. It further provided the sales price was $42,500 and that $39,419.67 was to be paid to the USDA.

---

[8] The Court understands short sale to mean a sale of the property for less than the amount of a creditor's lien where the lien will nevertheless be released upon the creditor's receipt of the net sale proceeds. The Short Fall/ Short Sale Addendum to the sale contract states: "SELLER and BUYER acknowledge the purchase price of the Property is not sufficient to satisfy all of the SELLER'S obligations related to the Property." Doc. 56-1, 21.

3

10. The HUD-1 Settlement Statement provided "Certification: I have carefully reviewed the HUD-1 Settlement Statement, and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement."

11. The August 30, 2013 sale resulted in the third-party purchaser buying the home for $42,500. At the same time and as part of the same transaction, Capital Title Insurance Company, L.C. paid $39,419.67 to the USDA through a check drawn upon its escrow account.

12. The USDA received the check in the amount of $39,419.67 on or about August 30, 2013.

13. On October 28, 2013, the USDA prepared a release of its mortgage against the property at 1239 Locust Street, Eudora, KS 66025. The release was recorded in the office of the Douglas County Register of Deeds on November 4, 2013, in Book 1108 at Pages 4263-4264.

14. On May 26, 2017, Debtors filed the bankruptcy petition.

15. More than 6 years passed from the time of the acceleration of the note and the filing of the bankruptcy petition.

16. Less than 6 years passed from the short sale and the USDA's receipt of the check in the amount of $39,419.67.

17. On August 10, 2017, the USDA timely filed a proof of claim for $97,008.73.

II. Analysis[9]

**A.  28 U.S.C. § 2415(a) is the controlling statute of limitations.**

The parties agree that 28 U.S.C. § 2415(a) is the controlling statute of limitations. It provides, in pertinent part:

> (a) . . . every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: *Provided*, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment . . . .

The basic rule is that an action on a debt owed to the United States is barred unless the complaint is filed within six years of accrual. As stated in the

---

[9] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2018). The "allowance or disallowance of claims against the estate" is a core proceeding which ths Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(B). There is no objection to venue or jurisdiction over the parties.

5

parties' joint stipulation of facts, by the time this case was filed on May 26, 2017, more than six years had passed from April 20, 2011, the date of acceleration of the loan, such that the claim would be time barred unless the limitations period was restarted.

Under the statute, either a partial payment of the debt or a written acknowledgment of the debt restarts the six year period. "The legislative history of § 2415 reflects a congressional intent to codify the common law principle that '[t]he obligation of a debt will continue when a debtor has acknowledged the debt and indicated his willingness to discharge the obligation.'"[10] The rationale is that these acts constitute a new promise to pay all or part of an antecedent debt. The Restatement (Second) of Contracts includes this concept by providing that a voluntary acknowledgment made to the creditor or a voluntary transfer of money in payment made by the debtor is a binding new agreement to pay an antecedent debt if the indebtedness is still enforceable except for the statute of limitations, "unless the facts indicate a different intention."[11] When considering whether the limitation period was

---

[10] *United States v Lorince*, 773 F. Supp 1082, 1087 (N.D. Ill. 1991) (quoting S. Rep. No. 1328, 89th Cong., 2d Sess. 3 (1966)).

[11] Restatement (Second) of Contracts § 82 (Am. Law Inst. 1981).

6

restarted, the question is whether a new promise to pay can be fairly implied from an acknowledgment or partial payment.[12]

Courts interpreting the federal statute at issue here have held that to extend the statue of limitations the acknowledgment or partial payment must reflect the debtor's intent to honor the debt. "[T]he acknowledgment in writing must be unequivocal and must express an intention on the part of the debtor to pay."[13] Similarly, to extend the statute of limitations based on a partial payment, "[i]t must be shown that there was part payment of an admitted debt, made and accepted in circumstances where an unequivocal promise may be inferred to pay the remainder of the debt."[14] If a debtor acts in an ambiguous manner, "it is implausible to construe her conduct as any sort of 'promise' to act further."[15]

The USDA argues that the short sale of Debtor's property in 2013 resulted in a renewal of the statute of limitations, under both the written acknowledgment and partial payment provisions. As the party seeking to

---

[12] Restatement (Second) of Contracts § 82 cmt. c.

[13] *United States v. Glens Falls Ins. Co.,* 546 F. Supp 643, 645 (N.D.N.Y. 1982). *See also Fed. Deposit Ins. Corp. v. Cardona*, 723 F.2d 132, 137 (1st Cir. 1983) (an inference that an estate intended to pay a debt arose from including the debt in a tax return).

[14] *Glens Falls Ins. Co.*, 546 F. Supp. at 646.

[15] *Lorince*, 773 F. Supp. at 1087.

7

benefit from the exception to the general statute of limitations, the USDA has the burden of proof.[16]

### B. Debtor[17] did not acknowledge the debt in writing.

In order to restart the statute of limitations under the "written acknowledgment" proviso, the USDA must prove four elements, as follows:

> (1) there is a writing; (2) the writing was signed, or may be deemed to have been adopted, by the debtor against whom the acknowledgment is asserted; (3) the writing unequivocally sets forth: (a) the debt due the government, and (b) an intent on the part of the debtor to pay that debt; and (4) the writing is communicated to the government.[18]

Debtors argues he did not sign a document acknowledging his liability for the deficiency remaining owing to the USDA after the short sale.

One document does expressly identify the existence of a deficiency; namely, the consent to sale. It states:

> USDA Rural Development has reviewed your request for consent to allow you to sell the subject property at 1239 Locust Street, Eudora, Kansas 66025 for the sale price that you have proposed. USDA Rural Development

---

[16] *United States v. Hughes Ranch, Inc.*, 33 F. Supp. 2d 1157, 1167-68 (D. Neb. 1999).

[17] As defined in the statement of facts, "Debtor" refers to Debtor Mark Kreutzer, who executed the note. Although the objection to the USDA proof of claim was filed by both Debtors, the Court for convenience ascribes the arguments in opposition to the USDA to Debtor Mark Kreutzer.

[18] *Id.* at 1168.

8

> consents to this sale and agrees to release its first mortgage lien upon receipt of net proceeds from the sale in an amount not less than $42,500.00. By approving this sale, the Agency is agreeing only to release its lien; however, you will remain ob1igated for repayment of any remaining debt. The remaining debt can be settled through the debt settlement process. For your convenience a Debt Settlement Application will be sent to you, please complete and return to the Centralized Servicing Center as instructed in the application.[19]

But, as pointed out by Debtors, the consent to sale letter cannot constitute a written acknowledgment within the proviso of § 2415 because it was signed by the USDA, but not by Debtor. The sales contract and the RESPA Settlement Statement were signed by Debtor, but they do not unequivocally acknowledge the debt due the government or an intent on the part of Debtors to pay that debt. They reflect that the lien amount exceeds the amount due under the note, but not an agreement to pay the excess as a personal liability of Debtor. The Court agrees with Debtors that there is no single document relating to the short sale which satisfies the criteria for a written acknowledgment.

The USDA in response argues that the foregoing elements for a written acknowledgment are satisfied when the short sale documents are considered as a whole, meaning as if they were a single document.[20] As to the existence of

---

[19] Doc. 56-2, 1.

[20] The USDA cites *United States v. Culver*, 958 F.2d 39 (4th Cir. 1991), but the facts of that case are clearly distinguished from this case. In *Culver*, the court

9

a writing, the USDA refers to the sale contract, the USDA consent to sale, and the HUD Settlement Statement. As to that writing having been signed by Debtor, the USDA refers to the sale contract and the HUD Settlement Statement. The USDA contends a composite writing, comprised of the following five documents, unequivocally sets forth the debt due the government and intent on the part of Debtors to pay the debt. (1) The USDA consent to the short sale, which is quoted above. (2) The sale contract which includes a short sale addendum, disclosing that the transaction is a short sale but not identifying the lien holder or the amount of the lien, and a short sale disclosure signed by Debtor which states:

> It is expressly understood by all parties that the seller owes more to seller's lender under the lender's mortgage on the subject property than the buyer is paying under the terms of buyer's contract to purchase the property. It further acknowledged by all parties that seller is unable to pay cash in hand at the time of closing sufficient sums to pay the difference between the purchase price and the amount owed on seller's loan Therefore, the sale will require the approval of the lender.[21]

---

found the limitations period renewed by the guarantors' acknowledgment of the debt in letters to the SBA disputing the amount but not the fact of the debt and inclusion of the obligation in a financial statement that was submitted to the SBA. *Id.* at 41.

[21] Doc. 56-1, 12.

(3) A letter from the USDA to Debtor declining to approve a previously proposed short sale which would have produced $28,900 for the USDA based upon the USDA's calculation of estimated proceeds from a foreclosure to be $40,700.[22] (4) The HUD Settlement Statement from the approved sale, signed by Debtors, stating that $39,419.67 would be paid to the USDA to pay off the first mortgage loan.[23] (5) The check for $39,419.67 from Capital Title Insurance Company payable to the USDA to "Payoff first mortgage loan USDA."[24] Finally, USDA argues that the writing was communicated to the government.

The Court is not convinced that these documents, when considered as a whole, constitute a written acknowledgment by Debtors of his obligation to the USDA for the deficiency. As stated above, the "acknowledgment in writing must be unequivocal and must express an intention on the part of the debtor to pay."[25] The focus is upon the intent of the debtor, not the understanding or assumptions of the creditor. The documents, when considered as a single writing, indicate Debtor's intent to apply the proceeds from the short sale to

---

[22] Doc. 57, 2.

[23] Doc. 58, 2.

[24] Doc. 59, 1-2.

[25] *Glens Falls Ins. Co.,* 546 F. Supp at 645.

11

the USDA debt in exchange for release of the lien, but are silent about personal liability for any deficiency. In fact, the amount of the deficiency is not stated or even approximated in any of the documents. The USDA's consent to the short sale states that liability for the deficiency remains, but even if considered as a portion of a larger writing signed by Debtors, it would be at most a recognition of the existence of personal liability, not a voluntary promise to pay that obligation. The short sale documents evidence that Debtors could not sell the property without the USDA's consent to the sale. A renewal of the statute of limitations requires a writing signed by Debtor unequivocally promising to pay; that is not present in this case.

### C. The statue of limitations was not restarted by Debtor's payment of the short sale proceeds.

Next the Court considers whether the payment of the short sale proceeds to the USDA satisfies the "partial payment" proviso of 28 U.S.C. § 2415(a). As stated above, as to partial payment, in order to restart the statute of limitations "[i]t must be shown that there was part payment of an admitted debt, made and accepted in circumstances where an unequivocal promise may be inferred to pay the remainder of the debt.[26] The crucial inquiry is the intent of the debtor when the payment was made, not the intention of the creditor

---

[26] *Id.* at 646.

when the payment was received.[27] The "circumstances of the payment must reflect the intent of the debtor to honor the debt."[28] This requires a voluntary payment by the debtor, not some other source, such as from an auctioneer following the sale of collateral repossessed by the creditor.[29]

Debtor contends the payment here was made by the short sale buyer, not Debtors. The USDA responds Debtors made the payment because when Capital Title Insurance made payment of the net sale proceeds to USDA, it was acting as Debtor's agent. Even if the agency existed, the Court must determine if the payment evidenced intent by Debtors to honor the personal deficiency. The USDA points to none, and the Court finds such evidence lacking. The short sale documents evidence intent to make payment in exchange for lien release, nothing more.

Case law does not support the USDA's position. In circumstances similar to this case, the Eleventh Circuit Court of Appeals held that "a payment made solely to obtain release of a property lien, does not, without more, constitute payment or acknowledgment of any debt personal to the

---

[27] *Id.*

[28] *Lorince*, 773 F. Supp. at 1087.

[29] *Id.* at 1088 (such a payment does not evidence the debtor's own promise to pay the debt).

13

debtor."[30] In the Eleventh Circuit case, the Begins in 1980 executed a promissory note, secured by mortgages on commercial property and the Begins' residence. The note was acquired by the SBA. No payments were made on the note by the Begins between 1985 and 1992. In January 1992, the Begins paid the SBA $15,000 to obtain release of the lien on their residence. A year later, the United States brought an action to foreclose the lien on the commercial property and obtained a deficiency judgment. The Begins appealed the in personam judgment. The Court of Appeals reversed, finding the claim barred by the 28 U.S.C. § 2415(a) statute of limitations. It rejected the government's argument that the payment to release the lien on the personal residence constituted a payment restarting the statute of limitations. It stated:

> Because of these differences between a lien and a personal debt and between the actions which may be brought upon each, a property owner's acknowledgment that his or her property is subject to a lien is not equivalent to an acknowledgment that the property owner owes a personal debt to the lien holder. Even when the property owner has not acknowledged the existence of an underlying in personam debt, he or she may pay the lien holder solely to obtain a release of the lien. In such circumstances, a payment made solely to obtain a release of a property lien does not, without

---

[30] *United States v. Begin*, 160 F.3d 1319, 1321 (11th Cir. 1998).

14

> more, constitute payment or acknowledgment of any debt personal to the property owner.[31]

This Court finds the foregoing reasoning sound and applicable to this case. The payment resulting from the short sale constituted the payment in full of the secured portion of the note. The USDA no longer has the remedy of foreclosure. The remaining liability is personal, a distinctly different obligation. By obtaining a purchaser for the mortgaged property, obtaining the USDA's consent to the short sale, and remitting the net sale proceeds to the USDA, Debtors did nothing more than make payment on an in rem obligation. This payment, standing alone, does not constitute partial payment sufficient restate the statute of limitations under 28 U.S.C. § 2415(a).

## III.  Conclusion

The Court concludes that the statute of limitations bars the claim of the USDA. The USDA concedes that the 28 U.S.C. § 2415(a) six year statute of limitations had run before Debtors' bankruptcy case was filed, unless one of the provisos for the starting of a new limitation period is present. The Court finds that neither condition is applicable. Debtor Mark Kreutzer did not acknowledge his personal liability in writing and the payment of the proceeds of the short sale to release the USDA lien was not sufficient to restart the

---

[31] *Id.* at 1321.

limitations period. The Court sustains Debtors' objection to the proof of claim filed by the USDA.

It is so ordered.

### ###